IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIGUEL HERRERA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 15 C 2983 |
| ADAM POHL, NATHAN HOUPT, CHRIS KNUDSEN, and JOHN DOES 1-4, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Miguel Herrera ("Herrera") has drawn on the principle established by Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) to sue Adam Pohl ("Pohl"), Nathan Houpt ("Houpt"), Chris Knudsen ("Knudsen") and four "John Doe" federal prison security guards (defendants will be referred to collectively as "Officers") for the asserted violation of his Fourth and Eighth Amendment rights stemming from his April 2013 arrest and subsequent detention. Currently before this Court for decision is Officers' motion to dismiss under Fed. R. Civ. P. ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted.

**Motion To Dismiss Standards**

Under Rule 12(b)(6) a party may move for dismissal for the "failure to state a claim upon which relief can be granted." Familiar Rule 12(b)(6) principles require the district court to accept as true all of Herrera's well-pleaded factual allegations and view them in the light most favorable to him as the non-moving party (Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 632 (7th Cir. 2013)). But "legal conclusions or conclusory allegations that merely recite a claim's

elements" are not entitled to any presumption of truth (Munson v. Gaetz, 673 F.3d 630, 632 (7th Cir. 2012)).

In the past decade the Supreme Court has made an important change in the evaluation of Rule 12(b)(6) motions via what this Court regularly refers to as the "Twombly–Iqbal canon" (a usage drawn from Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), as more finely tuned in Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam), and Ashcroft v. Iqbal, 556 U.S. 662 (2009)). That canon has introduced the concept of "plausibility" into the analysis, and in that respect our Court of Appeals has "interpreted Twombly and Iqbal to require the plaintiff to provide some specific facts to support the legal claims asserted" (McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks and citation omitted)). As McCauley went on to reconfirm, claimants must set out "enough details about the subject-matter of the case to present a story that holds together" (id.). Nevertheless "a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims [or] when it would be necessary to contradict the complaint in order to prevail on the merits" (Tamayo v. Blagojevich, 526 F.3d 1074, 1086 (7th Cir. 2008) (internal quotation marks and citations omitted)).

Because their focus is on the pleadings, Rule 12(b)(6) motions "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice" (Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). But a nonmovant has more flexibility, for he "may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings" (id.).

Matters of public record -- including court proceedings -- are entitled to proper judicial notice where they are not subject to reasonable dispute and are ascertainable through sources whose accuracy cannot be questioned (Ennenga v. Starns, 677 F.3d 766, 773-74 (7th Cir. 2012)). Such sources can include copies of an arrest warrant and criminal information where the plaintiff does not dispute that an arrest was conducted pursuant to a facially valid warrant (Williamson v. Curran, 714 F.3d 432, 441 (7th Cir. 2013)).

Upon dismissal pursuant to Rule 12(b)(6) courts should usually give a claimant at least one opportunity to amend (Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind., 786 F.3d 510, 519 (7th Cir. 2015)). And consistent with the principles of Rule 15(a)(2), courts generally grant leave to amend freely. But where "it is certain . . . that any amendment would be futile or otherwise unwarranted," the court can deny leave to amend (id. at 520).

## Factual Background

On March 21, 2013[1] the United States District Court for the Northern District of Indiana ("Indiana District Court") issued an arrest warrant ("the Warrant") for one "Miguel Angel Herrera" following a grand jury's return of an indictment in that name in United States v. Herrera, No. 13-CR-41 (N.D. Ind. 2013). But according to Herrera the target of the Warrant was actually someone else (Complaint ¶ 12). That other person had used Herrera's personal information to obtain identification from the State of Indiana and had posed as Herrera (id.).

---

[1] As all of the events relevant to this case occurred in 2013, this opinion will not persist in repeating the year. Citations to the parties' memoranda take the form "Mem. --," with a prefix of "H." for Herrera and "O." for Officers. In their memorandum Officers have drawn this Court's attention to the proceedings in the criminal cases that preceded this lawsuit, and where this Court takes judicial notice of those proceedings it refers to the records directly rather than to the exhibits attached to the Officers' memorandum, and it also omits citations to the docket numbers in those cases.

Herrera was in fact elsewhere when the crime was committed, and most importantly the video on which the Warrant was predicated showed clearly that he was not the person involved (Complaint ¶¶ 15, 19).

Herrera was arrested pursuant to the Warrant, and on April 11 he was delivered to the custody of FBI agents Houpt and Pohl (Complaint ¶¶ 5-6, 12). At his booking Herrera also spoke with Knudsen, an employee of the United States Marshals Service (Complaint ¶¶ 7, 15). "Houpt and/or Knudsen" (as the Complaint puts it) told Herrera that video evidence showed him selling drugs to an undercover agent (Complaint ¶ 15). Herrera asked to see that evidence, but his request was rebuffed (id.).

Herrera repeatedly told Pohl, Houpt, Knudsen and later on the John Doe defendants (all of the latter group were employed at the Hammond, Indiana prison facility) that they must have the wrong person (Complaint ¶¶ 13–17), protesting that he was elsewhere when the crime was committed (Complaint ¶ 15) and that he could not have committed it (Complaint ¶ 17). None of them investigated Herrera's assertion "that it was impossible for him to have committed the crime and that he did not in fact commit the crime" (Complaint ¶ 22).

While the Complaint is silent on the matter and Herrera's memorandum somewhat offhandedly denies it (H. Mem. 2), court records clearly indicate that Herrera had an initial appearance before the Indiana District Court on April 11. Following a detention hearing on April 15, that court ordered him held without bond pursuant to 18 U.S.C. § 3142(e).

Herrera's counsel obtained the video evidence of the crime on April 26 (Complaint ¶ 18), and by June 10 he had persuaded the United States Attorney that the video depicted someone other than Herrera (Complaint ¶ 20). At the request of the United States Attorney the Indiana District Court dismissed the indictment with prejudice on June 18 (Complaint ¶¶ 21, 23).

Herrera was again indicted by a federal grand jury on an unrelated charge the following day, an arrest warrant having been issued in that case on a criminal complaint a week earlier (United States v. Herrera-Torres, No. 13-CR-83 (N.D. Ind. 2013)).

**Possible Claim Arising from Arrest**

Ordinarily probable cause is an absolute bar to a suit for false arrest (Juriss v. McGowan, 957 F.2d 345, 349 n.1, 350 (7th Cir. 1992)). And as Kaley v. United States, 134 S. Ct. 1090, 1097 (2014) has recently reiterated, quoting Gerstein v. Pugh, 420 U.S. 103, 117 n.19 (1975):

> "An indictment fair upon its face, and returned by a properly constituted grand jury," we have explained, "conclusively determines the existence of probable cause" to believe the defendant perpetrated the offense alleged.

Nonetheless an officer who <u>knows</u> that a facially valid arrest warrant is not supported by probable cause (usually but not always because the arresting officer himself procured the warrant fraudulently) can be liable for false arrest (Williamson, 714 F.3d at 443-44, quoting Juriss, 957 F.2d at 350-51), and an officer's knowledge usually cannot be decided on a motion to dismiss (Williamson, 714 F.3d at 442).

But Herrera does not allege such knowledge or facts giving rise to a reasonable inference of knowledge. What Officers knew instead was that Herrera protested his innocence and on that basis asserted that the Warrant could not be for him (Complaint ¶¶ 13-17).

This opinion therefore turns to Herrera's attempt to paint his arrest as resulting from a mistaken identity. And an officer who seizes the wrong person pursuant to an otherwise valid warrant is liable if his mistake was unreasonable (see Tibbs v. City of Chicago, 469 F.3d 661, 664 (7th Cir. 2006)).

In that respect Herrera does not assert that it was unreasonable for the arresting Officers to think at the outset that the Warrant was for him. Indeed, on the facts he pleads the Warrant <u>was</u> for someone bearing his name who had committed the crime (Complaint ¶ 12):

> Unbeknownst to plaintiff, he had been the victim of identity theft and another person had obtained an identification issued by the state of Indiana using plaintiff's personal information. That warrant was for that other person, who had posed as plaintiff.

That allegation, taken as true, means that Herrera was in fact innocent, but stood wrongly accused. But that does not bring into play as to the arresting Officers, the caselaw such as <u>Tibbs</u> that provides relief for the unreasonable arrest of the wrong person in execution of a valid warrant.

## **Claim Arising from Continued Detention**

Once the question ceased to be one of arresting and processing someone who might well have been a dangerous criminal, however, the complexion of the situation that faced FBI agents Houpt and Pohl and Marshals Service employee Knudsen changed. For then those Officers could act with greater deliberation and so would have to stand responsible if it turned out that they rotely passed Herrera around through the bureaucracy (1) without regard for totally exculpatory information already in their possession or at their beck and call and (2) without stopping to consider that it could be their duty to consult that information.

As an initial matter, however, the fact that the Complaint alleges only pre-conviction deprivations (besides saying nothing about jail conditions) means that the Eighth Amendment is entirely inapposite (see <u>Armstrong v. Squadrito</u>, 152 F.3d 564, 570 (7th Cir. 1998)). Herrera's counsel recognizes that point but not its significance, stating that he reserved a right to amend the pleadings after announcing that he will not pursue Eighth Amendment claims (H. Mem. 6). But

- 6 -

there is no potential amendment to the Complaint that would make an Eighth Amendment claim proper in any event, so that any such reservation is without effect.

Instead detention following a person's initial appearance in court is governed by due process (Hernandez v. Sheahan, 455 F.3d 772, 777 (7th Cir. 2006)),[2] which in this case is guaranteed by the Fifth Amendment.[3] Due process requires more than mere formal adherence to minimally adequate procedures -- it has a substantive aspect as well (see Bettendorf v. St. Croix Cty., 631 F.3d 421, 426 (7th Cir. 2011)). And pretrial detention offends substantive due process when "an executive abuse of power shocks the conscience" (Armstrong, 152 F.3d at 570). Where there is time for cool reflection, a deliberately indifferent act may rise to the level of a constitutional violation (id. at 576-77). And unlike allegations of an Eighth Amendment

---

[2] Just a few words are in order as to the Fourth Amendment as well, for the really unique circumstances presented here may well take this case out of the conventional wisdom exemplified by the succinct statement in Hernandez, 455 F.3d at 777 that "the fourth amendment drops out of the picture following a person's initial appearance in court." Neither the Fourth Amendment nor the Fifth Amendment's due process clause permits officers to stick their heads in the figurative sand to justify detaining someone regardless of whether they play ostrich before the initial appearance or only afterwards. And the need to rely on due process to vindicate one's right to be free from unreasonable detention stems from the doctrine expressed in Garcia, 24 F.3d at 970 n.6 that "the seizure of a person ends after the Gerstein hearing," as well as from a concern (inapplicable here) over suits alleging that some really nonproblematic aspect of pre-indictment detention was nonetheless unconstitutional because it might be labeled "unreasonable" (see Wilkins v. May, 872 F.2d 190, 194 (7th Cir. 1989)). Thus what this opinion says about Fifth Amendment due process could well apply with equal force to arguments grounded in the Fourth Amendment.

[3] Herrera's failure to mention due process in the Complaint is of course not fatal because a pleader need not place any label -- and indeed can place the wrong label -- on his claim or claims (Johnson v. City of Shelby, 135 S. Ct. 346, 346-47 (2014) (per curiam); NAACP v. Am. Family Ins. Co., 978 F.2d 287, 291-93 (7th Cir. 1992); Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992)). Officers percipiently do not stand upon formalistic notions of pleading, and both sides address the Fifth Amendment claim on the merits in their respective memoranda.

violation, deliberate indifference in the due process context is equated with tort rather than criminal recklessness: It is a "conscious disregard of known or obvious dangers" and is satisfied "even though the defendant obtusely lacks actual knowledge of the danger" (id. at 577).

Where injury assertedly results from a failure to take actions that lie outside of the scope of a defendant's responsibility, of course, acting reasonably and in good faith will shield a defendant from liability (id. at 580). But a defendant cannot assert good faith if, for example, he refuses to convey a prisoner's complaints of improper imprisonment to those who can do something about them if the those complaints provide the defendant "with sufficient knowledge to suspect improper confinement" (id.). In such a situation blithely checking that a detainee is on the list of people to be detained can "evince[ ] the serious possibility of deliberate indifference" to that detainee's plight (id.).

That does not, however, attach potential liability to all of the defendants who up to this point have been collectivized as "Officers" for convenience in presentation. It is well settled that once probable cause has been established, an officer generally has no duty to investigate a person's claims of innocence (Garcia v. City of Chicago, 24 F.3d 966, 970-72 (7th Cir. 1994)). Probable cause had already been conclusively determined in this case by the grand jury (see Kaley, 134 S. Ct. at 1097). So for the John Doe defendants to have done anything about Herrera's situation they would have had to obtain access to the investigative file, clearly something outside of a jailer's bailiwick. And the Complaint also leaves it uncertain whether

Pohl had access to the file, for it mentions him only briefly as having joined with Houpt in arresting Herrera (Complaint ¶ 13).[4]

But on Herrera's allegations (accepted as true, as they must be for Rule 12(b)(6) purposes) Houpt and Knudsen (or perhaps just one of them, given the Complaint ¶ 15's "and/or") stated that "we have you on tape."[5] It is certainly a reasonable reading of that response to infer that they had seen the tape, and at the very least it indicates that they had ready access to it. And those Officers had Herrera -- who according to the Complaint looked nothing like the person in the video -- sitting before them denying that he could have been the one in that video.

Liability can therefore attach to Houpt and perhaps Knudsen under the Complaint's allegations in two alternative ways. First, it is possible that they had already seen the video and so entertained serious doubts that probable cause existed just from speaking with him (unless they were obtuse, which Armstrong, 152 F.3d at 577 reminds us is a legally insignificant distinction). Second, even had they not yet seen the video, it was in their possession or readily available to them, so that no further investigation other than a simple viewing was needed to verify that Herrera was innocent. In either case Houpt and Knudsen would have violated Herrera's constitutional rights, for an officer cannot close his eyes to exculpatory evidence

---

[4] Because of the nature of that allegation and the principle of notice pleading and not fact pleading that applies to federal litigation, it is possible that Pohl -- Houpt's partner in this case -- had equal access to the exculpatory video. Hence he is not home free at this threshold stage, and the ensuing discussion as to Houpt should be understood as possibly applying to Pohl as well for the present.

[5] This opinion does not of course reflect any factual findings by this Court, controlled as it is by Herrera's allegations. But again as a matter of convenience in analysis, the use of "we" in the text quotation causes the ensuing discussion to lump Houpt and Knudsen together.

already in his possession or available at his simple request and thus fail to bring it to his superior's attention.

To impose such minimal requirements does not call for investigation of the sort from which officers are sometimes excused. In fact, even in the Eighth Amendment context -- which it will be recalled requires criminal rather than merely tort recklessness (Armstrong, 152 F.3d at 577) -- a failure to consult pertinent and readily available information can constitute deliberate indifference (Hankins v. Lowe, 786 F.3d 603, 605-06 (7th Cir. 2015)). Thus what was at issue in Hankins, 786 F.3d at 605-06, was a parole officer's stubborn and callous refusal to determine when a parolee in his charge should be released from her restrictive conditions after he had forbidden her to ask the sentencing authority for that date herself, a step that required only a phone call on his part rather than checking records he already had. And it has long been the law that "[a] police officer may not close his or her eyes to facts that would help clarify the circumstances of an arrest" (BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986)).

Houpt and Knudsen cannot take refuge behind the rule that "there is no general duty to investigate further after acquiring information sufficient to establish probable cause," for that rule applies only when the purpose of additional investigation would be to uncover contradictory evidence, not when what is at issue is the adequacy of the evidence already collected (see BeVier, 806 F.2d at 127 n.1, distinguishing Gramenos v. Jewel Companies, Inc., 797 F.2d 432 (7th Cir. 1986)). On the same point Beauchamp v. City of Noblesville, 320 F.3d 733, 745-46 (7th Cir. 2003) said that facts learned after an arrest had occurred had no bearing on whether there was probable cause for the arrest, but Beauchamp did not countenance willfully turning a blind eye to evidence already gathered in the course of an investigation. Other cases have said that there is no duty on the part of jailers or police officers to investigate claims of innocence or

even mistaken identity after a constitutionally sufficient preliminary hearing and judicial determination of probable cause have taken place, but they have not excused someone who is much more closely tied to the case from a duty simply to <u>consult</u> totally exculpatory information already in his possession or there for his asking (e.g., <u>Atkins v. City of Chicago</u>, 631 F.3d 823, 828 (7th Cir. 2011); <u>Tibbs</u>, 469 F.3d at 665).

Although the "I" in FBI stands for "investigation," this Court would of course never impose an agent such as Pohl and Houpt[6] the duty to launch an investigation into the truth of an assertion by an indicted and arrested person whom they were transporting for appearance before a District Judge that he was innocent and the victim of a fraudster who had stolen his identity -- how many times are they likely to have heard "I didn't do it -- I was someplace else at the time the crime was committed"? But the situation posed by Herrera's case differs entirely in kind, not merely in degree -- it is poles apart from that commonly encountered scenario. Here the only "investigation" needed for Herrera's conclusive exculpation was for the agents to open their eyes and look at definitive evidence that was already in hand or readily at hand.

At this preliminary stage of the case, as already indicated, it cannot be stated with certainty whether the named defendants had the exculpatory video at hand at the time of the "we have you on tape" statement quoted in Complaint ¶ 15 or whether (perhaps more likely) the video was readily available for them to screen it without delay. But those alternatives could

---

[6] It may well be that the analysis employed here would not embroil Knudsen as well -- after all, the role of an employee of the Marshals Service scarcely equates to that of an FBI agent. But the Complaint that this opinion must credit for present purposes places Knudsen in the same basket as his codefendants, so that it will take discovery (rather than mere scrutiny of Herrera's pleading) to see whether his "and/or" allegation as to Knudsen will withstand scrutiny.

impact only on whether they could have apprised the Indiana District Judge of Herrera's clearly established innocence at the time of his initial appearance on April 11 or whether they should have done so a few days later, by the time of his April 15 detention hearing. And it is more than reasonable to conclude that in either event the District Judge would not have imposed the same detention order on a defendant who had been charged with an offense but whose innocence had been definitively established.

Baker v. McCollan, 443 U.S. 137 (1978) also hurts rather than helps Houpt and Knudsen. Herrera outlines a story very similar to that of the plaintiff in Baker, but with one difference that the Supreme Court found to be of the utmost importance in deciding that case (see Baker, id. at 144-45): Herrera was not detained for only "a period of days." But like Herrera, the plaintiff in Baker was arrested on a warrant issued for him only because someone else had stolen his identity and committed narcotics violations in his name (id. at 140-41).

Not only was Baker's finding of no liability predicated upon the short span of time it took the defendant to discover and rectify the error (id. at 144-45), but it also addressed only the duties of a supervising sheriff, not the actions of the deputies to whom the plaintiff actually complained (and who were not named in the lawsuit, id. at 148 (Blackmun, J., concurring)). Baker certainly did not stand for the proposition that liability could not be imposed on a defendant "who deliberately and repeatedly refused to check the identity of a complaining prisoner against readily available mug shots and fingerprints" (id. at 148 (Blackmun, J., concurring)). Instead the Supreme Court distinguished between the duty of a sheriff executing a warrant (someone who is not "required by the Constitution to investigate independently every claim of innocence (id. at 145-46 (majority opinion)) and the duty of one maintaining custody of

- 12 -

a detainee (who is freed only from the duty to "perform an error-free investigation" -- see id. at 146 (emphasis added)).

Hernandez, 455 F.3d at 776-77 also dealt only with a blanket policy and not with the question whether particular circumstances might render the conduct of individuals directly involved in the detention constitutionally unsound. That policy was analyzed under the rubric of Mathews v. Eldridge, 424 U.S. 319 (1976), which of course dealt with procedural due process, and the concern Hernandez, 455 F.3d at 777-78 expressed over an alternative policy was that a deputy who did not understand the evidence might set a prisoner free. It did not consider (as it had no occasion to address) an individual's obligation at least to look at potentially exculpatory evidence already in his possession or the possession of his fellow agents and to pass any discrepancies up the chain of command.

It is unsurprising that Baker and Hernandez came to the result they did in the context of weighing a policy, custom, practice or pattern, for as Rice ex rel. Rice v. Corr. Med. Srvs., 675 F.3d 650, 675 (7th Cir. 2012) has reiterated, a plaintiff cannot prevail against corporate or municipal defendants by showing only that "an employee . . . violated his constitutional rights." Instead such a plaintiff must satisfy the additional burden of showing that (id., internal quotation marks and citations omitted):

> a deliberate choice to follow a course of action is made from among various alternatives . . . a conscious choice among alternatives that evinces a deliberate indifference to the rights of the individuals with whom those employees will interact.

But that added requirement is entirely compatible with (and indeed assumes) a situation where "an employee . . . violated [the plaintiff's] constitutional rights" (id.), so that the courts' refusal to hold superiors liable for not having a policy of investigating claims of innocence does not

- 13 -

provide subordinates with an exception to the general rule that law enforcement personnel cannot willfully close their eyes to the evidence. Obviously the absence of respondeat superior liability does not insulate those actually responsible for a constitutional violation from liability.

It was ultimately discovered that Herrera could be charged with an unrelated crime, but that is of no effect when the question is whether he was unlawfully held for the month preceding the issuance of a warrant in that other case. The wheels that ultimately resulted in the indictment's dismissal were set in motion too late because Houpt and Knudsen failed in their duty to consider evidence at their ready disposal that at a glance would have resolved whether they had the wrong man.

## Qualified Immunity

Houpt and Knudsen raise the defense of qualified immunity, a defense that should be decided at as early a stage as is consistent with the liberal notice pleading requirements of Rule 8 (Tamayo, 526 F.3d at 1090). Qualified immunity protects an official from suit "for conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (Beaman v. Freesmeyer, 776 F.3d 500, 508 (7th Cir. 2015)). As Beaman, id. (internal quotation marks and citation omitted) went on to reiterate:

> A plaintiff can show that a right is clearly established by statute or constitution in at least two ways: (1) he can point to a clearly analogous case establishing the right to be free from the conduct at issue; or (2) he can show that the conduct was so egregious that no reasonable person could have believed that it would not violate established rights.

Houpt and Knudsen cannot therefore take refuge by simply pointing to the absence of clearly analogous caselaw. Law enforcement personnel do not get a free pass for shocking and egregious abuses of power simply because those abuses mark an innovation in the catalogue of shocking and egregious abuses of power. And their conduct as alleged by Herrera (and as

- 14 -

necessarily credited at this threshold stage) does fit under the well-established rubric of <u>Hankins</u>, <u>BeVier</u> and <u>Armstrong</u>, which possess the appropriate specificity to have put a reasonable officer on notice that he had a duty to act.

**<u>Conclusion</u>**

For the reasons stated in this opinion, Herrera's claims for violation of the Eighth Amendment by any of the defendants are dismissed, as are his Fifth Amendment claims against the John Doe defendants. But Herrera's Fifth Amendment claim against Houpt and Knudsen (and perhaps Pohl as well) is plausible on its face, and that may be true as to a Fourth Amendment claim as well (see n.2). In any event the survival of one or both of those grounds for recovery calls for an answer that addresses Herrera's allegations. This Court orders the three named defendants to file such an answer on or before December 22, 2015 and schedules a status hearing at 9 a.m. January 4, 2016.

_____
Milton I. Shadur
Senior United States District Judge

Date: December 1, 2015